**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Christopher W. Rich**, OSB No. 990954
CRich@perkinscoie.com
**Erick J. Haynie**, OSB No. 982482
EHaynie@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **EAGLE STAR ROCK PRODUCTS LLC**, an Oregon limited liability company, and **WILKINS TRUCKING CO., INC.**, an Oregon corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>**PCC STRUCTURALS, INC.**, an Oregon corporation; **RED HAWK FIRE PROTECTION, LLC**, an Oregon limited liability company; and **LOVETT, INC.**, formerly known as Lovett Excavating, Inc., an Oregon corporation,<br><br>                    Defendants. | Case No. 3:24-cv-00681<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br><br>PRAYER:  $3,497,098.46 |

Plaintiffs Eagle Star Rock Products, LLC ("Eagle Star") and Wilkins Trucking Co., Inc.

("Wilkins Trucking") ("Wilkins Trucking," and together with Eagle Star, "Plaintiffs") state the

following for their Complaint in this action against Defendants PCC Structurals, Inc., an affiliate

1-   COMPLAINT

146325.0001.0001\166045075.9

of Precision Castparts Corp. ("PCC"), Red Hawk Fire Protection, LLC ("Red Hawk"), and

Lovett, Inc., formerly known as Lovett Excavating, Inc. ("Lovett") (collectively, "Defendants"):

## INTRODUCTION

Eagle Star and Wilkins Trucking bring this action against Defendants under the federal

Resource Conservation and Recovery Act (42 U.S.C. § 6972) ("RCRA"), along with certain state

law claims asserted only against PCC.  The action arises generally from the arranging,

transporting, and disposal of contaminated waste materials on Plaintiffs' property and associated

acts of negligence and wrongful non-disclosure.  The harm arises from certain polychlorinated

biphenyls ("PCBs") contained within the waste material that originated from PCC's campus

located at 4600 S.E. Harney Drive in Portland, and which PCC arranged for the generation,

transportation and disposal of at Plaintiffs' facilities.  Those PCBs were ultimately illegally

deposited and disposed on Plaintiffs' properties as a result of Defendants' wrongful acts,

omissions and tardy disclosures.  As is well established by science and law, PCB's are highly

carcinogenic chemical compounds, formerly used in industrial and consumer products.  The

production of PCB's were banned in the United States by the Toxic Substances Control Act in

1976 and internationally by the Stockholm Convention on Persistent Organic Pollutants in 2001.

By this action, in which Plaintiffs assert claims arising under RCRA's citizen enforcement

provisions (42 U.S.C. § 6972) along with certain state law claims against only PCC, Plaintiffs

seek remediation costs, injunctive relief, attorney's fees and damages flowing from the wrongful

arrangement, transportation and disposal of PCBs on Plaintiffs' property.

## PARTIES

### 1.

Eagle Star Rock Products LLC is a limited liability corporation organized under the laws

of Oregon with a principal place of business at 35365 Hankey Road, St. Helens, OR, 97501.

2-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**2.**

Wilkins Trucking Co., Inc. is a corporation organized under the laws of Oregon with a principal place of business at 939 N. Columbia Boulevard, Portland, OR, 97217.

**3.**

PCC is an Oregon corporation with a principal place of business located at 10121 S.E. Sunnyside Road (Suite 230) in Clackamas, Oregon.

**4.**

Lovett is a corporation organized under the laws of Oregon with a principal place of business at 6920 N.E. 42nd Ave., Portland, OR, 97218.

**5.**

Red Hawk is a limited liability corporation organized under the laws of Oregon with a principal place of business at 801 Valley Ave. NW, Suite D, Puyallup, WA, 98371.

**JURISDICTION AND VENUE**

**6.**

This Court has jurisdiction over this action under RCRA, 42 U.S.C. § 6972(a), and 28 U.S.C. § 1331.  In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims against PCC under 28 U.S.C. § 1367(a).

**7.**

This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391 because this action arose principally in the State of Oregon, and within the Portland Division of this United States District Court.

**8.**

In addition, all Defendants in this case, as well as the Oregon Department of Environmental Quality ("DEQ") and the federal Environmental Protection Agency (the "EPA") were served with notice of intent to file this action more than 90 days prior to the filing of this Complaint, as required by 42 U.S.C. § 6972(b)(2)(A).  A copy of Plaintiffs' Notice of Violations

3-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

146325.0001.0001\166045075.9

and Intent to File Suit Under Resource Conservation and Recovery Act dated August 15, 2023 (the "RCRA Citizen Suit Notice") is attached hereto as **Exhibit A**.

9.

The United States District Court for the District of Oregon is a court of competent jurisdiction located within the State of Oregon.

FACTUAL BACKGROUND

***Plaintiffs' Business Operations***

10.

Eagle Star is a sand and gravel supplier that operates a mine in Scappoose, Oregon. Eagle Star and Wilkins Trucking coordinate the transport of soil and fill to and from the mine, located at 35365 Hawley Road in St. Helens, Oregon (the "Eagle Star Mine").

11.

Wilkins Trucking accepts clean fill material at its Wilkins Meadows Pit facility located at 846-398 N. Schmeer Rd, Portland, Oregon, 97217 (the "Wilkins Meadows Pit") from area construction and excavation projects.

12.

"Clean fill material" is defined under OAR 340-093-0030(18) as "material consisting of soil, rock, concrete, brick, building block, tile or asphalt paving, which do not contain contaminants which could adversely impact the waters of the State or public health. Clean fill does not include putrescible wastes, construction and demolition wastes, and industrial solid wastes."

13.

Eagle Star Mine is required to conduct reclamation (i.e., replacing mined-out areas with clean fill) in accordance with the State of Oregon's Department of Geology and Mineral Industries ("DOGAMI") permit DOGAMI ID# 05-0055 ("DOGAMI Permit"). Under the

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DOGAMI Permit, Eagle Star Mine is authorized to accept "clean fill material" (as defined in OAR 340-093-0030) for mine reclamation pursuant to OAR 632-030-0025(bb).

14.

At all material times, Wilkins Trucking charged a tipping fee of approximately $16.75 per ton of fill brought and stored at the staging area at the Wilkins Meadows Pit.

15.

The business operations and permitting Wilkins Trucking and the Eagle Star Mine are integrated into Plaintiffs' business model, *i.e.*, clean fill material received at the Wilkins Meadows Pit provides, in part, clean "reclamation" fill for the Eagle Star Mine. The close proximity of Wilkins Meadows Pit to Portland-area construction projects makes the site attractive to construction and excavating companies because of lower transportation and fuel costs compared to other (more distant) fill disposal areas in surrounding counties.

16.

Similarly, the clean fill taken in by Wilkins Meadows Pit provides Eagle Star Mine with a local (and lower cost) stream of clean fill to be used for mine reclamation. In the mining context, reclamation refers to the process by which adverse environmental effects of surface mining are minimized and mined lands are returned to a beneficial end use. Successful reclamation often takes years of careful and deliberate care and requires a stream of incoming clean fill to restore mined areas to a specified elevation in accordance with the DOGAMI Permit and related rules and regulations.

17.

Wilkins Meadows Pit has limited space. Accordingly, Plaintiffs' business model requires constant movement of material from the Wilkins Meadows Pit to Eagle Star Mine to maintain capacity for customers while simultaneously replacing mined material at Eagle Star Mine with the clean fill from Wilkins Meadows Pit. The integrated nature of Wilkins Trucking, Wilkins Meadows Pit and Eagle Star Mine are core to Plaintiffs' business model.

5-   COMPLAINT

### *PCC's Fire Suppression Line Renovation Leads to Contaminated Fill Disposal*

**18.**

PCC manufactures investment casings, forged components, and airfoil castings for use in the aerospace, industrial gas turbine, and defense industries. Located in Portland, Oregon, PCC's Large Parts Campus ("LPC") specializes in air and vacuum investment cast components for aerospace, energy, and commercial applications. LPC contains more than 660,000 square feet of manufacturing space.

**19.**

In or around July 2021, PCC, working to upgrade a fire suppression line at the Portland LPC, retained Red Hawk to construct and upgrade the fire suppression line. PCC oversaw the project which started construction and excavation on July 1, 2021. Part of that project included oversight of "trenching" activities near LPC maintenance buildings which would hold the new fire suppression line. "Trenching" refers to the process of digging a narrow trench in the ground for the instillation, maintenance, or inspection of pipelines, conduits, or cables during construction and related stockpiling of the removed soil for disposal.

**20.**

Red Hawk subcontracted with Lovett to transport and dispose of the soil and fill associated with the trenching to upgrade PCC's fire suppression systems at the LPC.  Red Hawk and Lovett were onsite at various times during the trenching for PCC's fire suppression project.

**21.**

Upon information and belief, PCC maintains its own company standards and protocols to characterize all soil before it is removed from PCC property.  Characterization of soil is also necessary to determine how the excavated material could be managed or disposed in accordance with applicable environmental laws, *e.g.*, PCC had to determine if the excavated material from trenching was "clean fill material" or if it contained hazardous or toxic substances requiring disposal at a regulated landfill. Soil characterization refers to the process of analytical testing of

6-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

the soil at a construction site in order to ensure that the soil adheres to state and federal regulations prior to subsequent reuse or disposal.

## 22.

On information and belief, the trenching activities at PCC's LPC began in July of 2021.

## 23.

Unbeknownst to Plaintiffs, neither PCC, nor Lovett nor Red Hawk, "characterized" the fill from the trenching project begun in July 2021 for PCBs or other hazardous/toxic substances before it was transported offsite from PCC's LPC.

## 24.

Even though the fill had not been characterized in accordance with PCC's policy, PCC arranged for Red Hawk to remove the soil, and Red Hawk retained Lovett to transport at least two truckloads containing uncharacterized asphalt and excavated soil from the trenching to Wilkins Meadows Pit from the PCC trenching project, reflecting approximately 17 tons of material purportedly as "clean fill."

## 25.

The contaminated material originating from PCC was briefly staged at the Wilkins Meadows Pit facility in early July 2021, then subsequently transported to the Eagle Star Mine quarry and deposited into the reclamation fill area of the mine as part of Eagle Star Mine's standard practice.

## 26.

At no time during the staging or delivery of the contaminated materials to Plaintiffs' places of business were Plaintiffs aware that the materials were contaminated with PCBs. Plaintiffs did not know, and had no reasonable basis to suspect, that the material received was not "clean fill" in accordance with applicable law.  Plaintiffs, in the normal course of business, accepted the fill delivery.

7-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**27.**

Upon information and belief, PCC representatives, after discovering that soil had left PCC's property without being characterized, tested a sample of the remaining soil in the excavation from the trenching project associated with upgrading the fire suppressors at PCC. The testing revealed PCBs detections at a maximum concentration of 2.36 mg/kg with an average PCB concentration of .765 mg/kg. Those levels exceed the regulatory clean fill criteria.

**28.**

Unbeknownst to Plaintiffs, the PCB contaminated soil was transported to the Eagle Star mine and deposited in the reclamation fill area in early July 2021.

**29.**

On no earlier than July 15, 2021, Defendants and/or PCC first informed Plaintiffs that the fill from PCC may have been contaminated with PCB.  Meanwhile, in the intervening time since the contaminated fill arrived at the reclamation area, approximately 18,000 cubic yards of unrelated clean was transported and deposited into the mine reclamation area as part of Plaintiffs' regular business operations, on top of the contaminated fill from PCC.

**30.**

By the time Plaintiffs had learned that the testing revealed positive results for soil contaminants, and at no fault of Plaintiffs, it had mixed in the quarry with uncontaminated fill as part of the reclamation authorized by Eagle Star's DOGAMI Permit.

**31.**

On August 13, 2021, DOGAMI issued a Cease-and-Desist demand to Eagle Star that prohibited the continued import and placement of any fill at Eagle Rock Mine.  A copy of this demand is attached as **Exhibit B**.

**32.**

In connection with the referenced demand, DOGAMI, pursuant to its authority under ORS 517.860, demanded that Eagle Star "immediately cease importing all fill material until the

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

department has approved a detailed imported fill plan that meets the requirements of OAR 632-030-0025(bb)."

**33.**

The Cease-and-Desist from DOGAMI began a protracted process whereby Eagle Star has been forced to coordinate with the United States Environmental Protection Agency ("EPA"), the Oregon Department of Environmental Quality ("DEQ"), and DOGAMI to comply with the Cease-and-Desist to obtain authorization to continue normal mining and reclamation processes.

**34.**

Eagle Star complied with the terms of the DOGAMI Cease-and-Desist and stopped transporting fill to the mine after August 13, 2021. Doing so disrupted the timely transport of fill to and from Wilkins Meadows Pit, Plaintiffs' related reclamation efforts, and impacted a substantial portion of Plaintiffs overall business operations.

**35.**

Eagle Star spent the next year and more working to address the obligations imposed by DOGAMI and DEQ, all while Eagle Star and Wilkins Trucking faced significant disruptions to their business.  Specifically, Eagle Star could not conduct mining activity because it could not generate overburden or other material which had to be placed in the mine reclamation area due to DOGAMI's Cease-and-Desist order.  Additionally, Eagle Star had to locate and pay for sand and gravel from other businesses to meet prior long-term contracts.  Correspondingly, plaintiff had to locate and pay for offsite disposal of material at the closest landfill (Scappoose Sand & Gravel Co.) for the duration of the Cease-and-Desist order.

**36.**

Eagle Star also began significant engineering and environmental work to monitor the extent of the PCB contamination and to prepare for the Eagle Star Mine to return to normal operations.

9-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**37.**

Eagle Star hired the environmental and engineering firms Water Environment Resources and GeoSyntec Consultants ("GeoSyntec") and environmental legal counsel at Perkins Coie LLP ("Perkins Coie") to advise on environmental compliance with appliable statutes, rules, regulations, permits, and orders and to work with DOGAMI, DEQ and EPA on a compliance path forward that would lead to DOGAMI lifting the Cease-and-Desist order.

**38.**

On October 5, 2021, as a condition of the Cease-and-Desist from DOGAMI, Eagle Star submitted a revised Imported Fill Plan ("IFP") to DOGAMI for review and approval.

**39.**

On October 25, 2021, DOGAMI notified representatives of Eagle Star that the IFP would not be approved until Eagle Star could provide documentation that the "PCB issue" had been resolved with DEQ.

**40.**

Throughout November and December of 2021, Eagle Star, through its representatives GeoSyntec and Perkins Coie, diligently communicated with DEQ and EPA via email and virtual meetings regarding resolution of the PCB contamination at the mine. Upon information and belief, DEQ involved EPA because EPA also retained jurisdiction over PCB disposal under the federal Toxics Substances Control Act ("TSCA").

**41.**

Eventually, Eagle Star Mine was able to secure Solid Waste Letter Authorization ("SWLA") approval to leave in place the contaminated soil (at least temporarily, pending EPA approval of final disposal authorization), which would permit Eagle Star Mine to resume normal operations.

10-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**42.**

With the SWLA conditions approved, Eagle Star Mine was able to resume normal operations no earlier than June 1, 2023.

**43.**

Plaintiffs' attempt to return to normal business operations has been costly. Eagle Star Mine expended significant out-of-pocket resources to address the myriad problems associated with the unauthorized dumping of PCB-contaminated fill at its site.

**44.**

Eagle Star Mine currently estimates it spent $32,388.00 (no less than) on engineering costs. This includes costs associated with the environmental engineering required to identify and assess the location and extent of the PCB contamination at Eagle Star Mine.

**45.**

Additionally, Eagle Star Mine spent an estimated $429,710.46 (no less than) on dumping fees associated with the excess of fill that was collecting at Wilkins Meadows Pit during the period of the DOGAMI-enforced Cease-and-Desist.  Plaintiffs will prove this category of damages (and all categories of damages) at trial.

**46.**

Additionally, Plaintiffs have incurred approximately $35,000 (no less than) in legal fees related to advise on environmental compliance with appliable statutes, rules, regulations, permits, and orders and to work with DOGAMI, DEQ and EPA on a compliance path forward.

**47.**

Plaintiffs have also suffered adverse impacts to their business as a direct and proximate result of Defendants' conduct, including without limitation lost profits, lost opportunity costs, and additional damages flowing from the diversion of management time and attention away from Plaintiffs' standard business operations. Plaintiffs have also had to expend substantial expenses, including without limitation attorney fees, addressing the regulatory concerns raised by the

11-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

various regulatory bodies who have become involved as a result of Defendants' conduct, including EPA, DEQ and DOGAMI. Plaintiffs have also incurred substantial debt, and debt expense, as a direct and proximate result of Defendants' conduct.  Plaintiffs' lost profits and other direct and indirect costs damages conduct flowing from the events in question are estimated to be $3,000,000 and are in such exact amount as Plaintiffs will prove at trial.

**48.**

On or about June 29, 2023, Plaintiffs executed a tolling agreement with PCC (the "Tolling Agreement") in connection with Plaintiffs' on-going efforts with PCC to attempt to amicably resolve matters in dispute.  The purpose and effect of the Tolling Agreement was to toll application of the Statute of Limitations as to Plaintiffs' claims against PCC relating to the matters in dispute, in accordance with the terms of the Tolling Agreement.  Despite efforts at resolution, the matters in dispute remain unresolved as of the date of the filing of this action.   By operation of the Tolling Agreement or otherwise, none of the claims alleged in this action are barred by any governing Statute of Limitations.

**FIRST CLAIM FOR RELIEF**
**Citizen Enforcement Claim**
**Resource Conservation and Recovery Act**
**(Against All Defendants)**

**49.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**50.**

RCRA, and the regulations promulgated thereunder, establish a cradle-to-grave tracking and management system for hazardous waste, setting standards for generators, transporters, and treatment, storage, and disposal facilities, as well as establishing a permit system to enforce such standards.

12-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**51.**

RCRA prohibits the disposal of solid waste, except at an approved landfill or hazardous

waste disposal facility. 42 U.S.C. §§ 6945(a), 6903(14). RCRA defines "disposal" as "the

discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or

hazardous waste into or on any land or water so that such solid waste . . . or any constituent

thereof may enter the environment or be emitted into the air or discharged into any waters,

including ground waters." 42 U.S.C. § 6903(3). Moreover, the federal Toxic Substances Control

Act of 1976, 15 U.S.C. §§ 2601 et seq., ("TSCA") prohibits the disposal of PCB Remediation

Waste except in accordance with regulations adopted thereunder. See 40 C.F.R. § 761.61.

**52.**

Section 7002 of RCRA provides the framework for citizen suits against persons alleged

to be in violation of any permit, regulation, or other requirement of RCRA. 42 U.S.C. §

6972(a)(1)(A)–(B). The citizen suit provision allows "any person" to sue anyone who has

contributed or is contributing to the presence of solid or hazardous waste which may present an

imminent and substantial endangerment to health or the environment.

**53.**

Liable parties, for purposes of a citizen suit under RCRA, include various parties

referenced by Section 7002(a)(l)(B).  Included in § 7002(a)(l)(B) are entities that generated;

transported; owned or operated a treatment, storage, or disposal facility; or contributed to "past

or present handling, storage, treatment, transportation, or disposal" of the waste at issue.

**54.**

Defendants have all either generated, transported, stored, or disposed of PCB-

contaminated fill, which is a solid waste and hazard as those terms are defined under RCRA, 42

U.S.C. § 6901, et seq., as well as under the TSCA and Oregon's state solid and hazardous waste

laws and regulations.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**55.**

Defendants have each contributed to the past handling, storage, treatment, transportation, or disposal of PCB Remediation Waste at Wilkins Meadow Pit, Eagle Star Mine and/or the Facility in violation of TSCA. Defendants bear responsibility for creating such conditions that currently may pose an imminent and substantial endangerment to the public health and the environment in Oregon in violation of RCRA and TSCA.

**56.**

Pursuant to 42 U.S.C. § 6972(b)(2)(A), Plaintiffs notified Defendants, the Administrator of the EPA (the "Administrator"), and the State of Oregon of the endangerment more than 90 days in advance of filing this action. In connection with its filing, Plaintiffs also provided or will provide a copy of this Complaint to the Administrator. To Plaintiffs' knowledge, neither the Administrator nor the state of Oregon has commenced any of the actions set forth under 42 U.S.C. § 6972(b)(2)(B), (b)(2)(C).

**57.**

Under 42 U.S.C. § 6972(a)(1)(B), Defendants are individually and jointly liable pursuant to 42 U.S.C. § 6972, et seq., for conducting such action as are necessary to abate the endangerment and to remediate the hazardous substances on Plaintiffs' property, because they are past and/or present generators, transporters, and/or owners or operators of a facility who contributed to the handling, storage, and/or transportation of solid or hazardous waste that may now present an imminent and substantial endangerment to health or the environment.

**58.**

Plaintiffs seek an order of the court compelling Defendants to conduct assessment and remedial action activities necessary to eliminate the endangerment, which at a minimum would include remediating the soil and ground water to those cleanup standards described under Oregon law and regulations, and to obtain a government certification from the Oregon DEQ,

14- COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

146325.0001.0001\166045075.9

EPA, and any other government agency with jurisdiction over the contaminants certifying that the assessment and remedial action satisfy applicable standards.

**59.**

Under 42 U.S.C. § 6972(e), Plaintiffs are entitled to recover costs incurred in bringing this action, including reasonable attorney fees and expert witness fees.

**SECOND CLAIM FOR RELIEF**
**Negligence**
**(Against PCC Only)**

**60.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**61.**

At all times relevant hereto, PCC owed Plaintiffs a duty to prevent reasonably foreseeable harm.  As part of this duty, Defendants owed at least the following duties of care to Plaintiffs:

(1)     The duty to properly determine the amount of PCB in excavated material prior to transport to Plaintiffs' property, or otherwise properly test or characterize the soils in question;

(2)     The duty to ship such material under proper hazardous waste manifest(s) as required by law;

(3)     The duty to immediately take all action to abate, prevent and clean up any dumping of PCB-contaminated fill from its property; and

(4)     The duty to make sure its employees and agents in charge of environmental monitoring and disclosure are present and available during operations.

**62.**

PCC breached the above duties of care, and failed to prevent foreseeable harm to Plaintiff, by (without limitation) failing to:

15-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

(a)    Properly determine the amount of PCB, or otherwise properly test or characterize, the fill authorized for transport to Plaintiffs' property;

(b)    Ship material from PCC under proper hazardous waste manifest(s) as required by law;

(c)    Timely notify Plaintiffs of the presence or risk of presence of PCB in fill delivered or tendered to Plaintiffs;

(d)    Make reasonable inquiry as to the quality and content of fill tendered to Plaintiffs;

(e)    Immediately take all action to abate, prevent and clean up PCB-contaminated fill dumped on Plaintiffs' property; and

(f)    Failing to have proper staffing present and available to addressing environmental monitoring and disclosure issues.

**63.**

PCC's acts and omissions as alleged in this action constitute negligence.

**64.**

As the direct and proximate result of PCC's negligence, Plaintiffs have and will suffer damages including, but not limited to: (i) diminution in property value; (ii) loss of use of their property; (iii) impairment of marketability; (iv) costs, professional fees and attorney fees incurred to investigate, remediate and clean up PCB-contaminated fill; (v) excavation, contractor and other expenses incurred to investigate and/or remediate contaminated soils delivered to Plaintiffs at the fault of PCC; (vi) lost profits; (vii) reputational loss resulting from the stigma of contamination caused substantially by PCC; and (vii) other direct, indirect, consequential damages.

**65.**

Plaintiffs' damages total no less than $3,497,098.46 and are in such exact amount as Plaintiffs will prove at trial.

16-  COMPLAINT

**66.**

Plaintiffs are also entitled to prejudgment interest on all liquidated elements of damage alleged in this action and claim.

**67.**

Because of the reckless nature of PCC's acts and omissions, Plaintiffs should also be awarded punitive damages.

**THIRD CLAIM FOR RELIEF**
**Negligence Per Se**
**(Against PCC Only)**

**68.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**69.**

PCC violated Oregon Administrative Rule ("OAR") 340-102-0011 by generating a "residue" as defined in OAR 340-100-0010 and failing to determine if that residue is a hazardous waste.

**70.**

PCC violated 40 CFR 262.20(a)(1) and (b) by offering hazardous waste for transport without preparing a uniform hazardous waste manifest and designating a permitted hazardous waste disposal facility.

**71.**

PCC violated OAR 340-093-0040 by disposing or authorizing the disposal of solid waste at a disposal site that was not permitted by DEQ to receive that waste.

**72.**

PCC violated 40 CFR 761.61 by disposing of PCBs through a method and location not authorized under 40 CFR 761.61.

17-  COMPLAINT

146325.0001.0001\166045075.9

**73.**

PCC violated 40 CFR part 761 subpart K by shipping PCB waste, or causing PCB waste to be shipped, without a proper manifest.

**74.**

As the direct and proximate result of PCC's law violations and negligence *per se*, Plaintiffs have and will suffer damages including, but not limited to: (i) diminution in property value; (ii) loss of use of their property; (iii) impairment of marketability; (iv) costs, professional fees and attorney fees incurred to investigate, remediate and clean up PCB-contaminated fill; (v) excavation, contractor and other expenses incurred to investigate and/or remediate contaminated soils delivered to Plaintiffs at the fault of PCC; (vi) lost profits; (vii) reputational loss resulting from the stigma of contamination caused substantially by PCC; and (vii) other direct, indirect, consequential damages.

**75.**

Plaintiffs' damages total no less than $3,497,098.46 and are in such exact amount as Plaintiffs will prove at trial.

**76.**

Plaintiffs are also entitled to prejudgment interest on all liquidated elements of damage alleged in this action and claim.

**77.**

Because of the reckless nature of PCC's acts and omissions, Plaintiffs should also be awarded punitive damages.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

## FOURTH CLAIM FOR RELIEF
### Trespass/Nuisance
### (Against PCC Only)

**78.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**79.**

The continued presence of PCB-contaminated fill constitutes a physical intrusion of Plaintiffs' property Plaintiffs' legally protected interest in such property.

**80.**

The presence of PCB-contaminated fill on Plaintiffs' property was caused substantially by the actions of Defendants.

**81.**

Plaintiffs did not permit or allow PCC to transport PCB-contaminated fill onto their property.

**82.**

The unpermitted physical intrusion of PCB-contaminated fill constitutes a trespass and/or a nuisance.

**83.**

As the direct and proximate result of the trespass of petroleum fuels, petroleum hydrocarbons and other petroleum constituents on, in and under the Property, Plaintiffs have and will suffer damages including, but not limited to, diminution in property value, impairment of marketability and costs to investigate, remediate and clean up the petroleum fuels, petroleum hydrocarbons and other petroleum contamination.

**84.**

PCC's acts and omissions in relation to the PCBs in question were a substantial factor contributing to the trespass alleged herein.

19- COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

146325.0001.0001\166045075.9

**85.**

As the direct and proximate result of PCC's wrongful conduct, Plaintiffs have and will suffer damages including, but not limited to: (i) diminution in property value; (ii) loss of use of their property; (iii) impairment of marketability; (iv) costs, professional fees and attorney fees incurred to investigate, remediate and clean up PCB-contaminated fill; (v) excavation, contractor and other expenses incurred to investigate and/or remediate contaminated soils delivered to Plaintiffs at the fault of PCC; (vi) lost profits; (vii) reputational loss resulting from the stigma of contamination caused in substantial part by PCC; and (vii) other direct, indirect, consequential damages.

**86.**

Plaintiffs' damages total no less than $3,497,098.46 and are in such exact amount as Plaintiffs will prove at trial.

**87.**

Plaintiffs are also entitled to prejudgment interest on all liquidated elements of damage alleged in this action and claim.

**88.**

Because of the reckless nature of PCC's acts and omissions, Plaintiffs should also be awarded punitive damages.

**FIFTH CLAIM FOR RELIEF**
**Indemnity**
**(Against PCC Only)**

**89.**

Plaintiffs re-allege and incorporate by reference all allegations set forth above as if fully alleged herein.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

146325.0001.0001\166045075.9

**90.**

PCC has caused Plaintiffs substantial damages and losses by tendering contaminated soil. In connection with Plaintiffs' receipt of contaminated soil, Plaintiffs have undertaken obligations with one or more regulatory authorities to remediate or otherwise mitigate the environmental consequences flowing from PCC's wrongful conduct. Plaintiffs may also undertake further such obligations, after the filing of this action. As between Plaintiffs and PCC, these obligations (and all associated expenses) ought to be discharged by PCC, as PCC's acts and omissions were a substantial factor in the occurrence of such obligations.

**91.**

As the direct and proximate result of Defendants' conduct and omissions, Plaintiffs have and will suffer damages including, but not limited to: (i) diminution in property value; (ii) loss of use of their property; (iii) impairment of marketability; (iv) costs, professional fees and attorney fees incurred to investigate, remediate and clean up PCB-contaminated fill; (v) excavation, contractor and other expenses incurred to investigate and/or remediate contaminated soils delivered to Plaintiffs at the fault of PCC; (vi) lost profits; (vii) reputational loss resulting from the stigma of contamination caused in substantial part by PCC; and (vii) other direct, indirect, consequential damages.

**92.**

Plaintiffs' damages total no less than $3,497,098.46 and are in such exact amount as Plaintiffs will prove at trial.

**93.**

Plaintiffs are also entitled to prejudgment interest on all liquidated elements of damage alleged in this action and claim.

**JURY DEMAND**

**94.**

Plaintiffs request a jury trial for all claims in this action so triable.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

146325.0001.0001\166045075.9

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.      For a declaratory judgment that Defendants have violated and continue to be in violation of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B);

B.      For an order and judgment of the court compelling Defendants to conduct any assessment and remedial action activities necessary to eliminate the endangerment caused by their PCB contamination, and to obtain a government certification from EPA, DEQ and any other government agency with jurisdiction over the contaminants certifying that the assessment and remedial action satisfy applicable standards;

C.      For an award against Defendants of any and all general and compensatory damages awardable under RCRA;

D.      For an award of damages against PCC on Plaintiffs' pendant state law claims totaling no less than $3,497,098.46, and in such exact amount as Plaintiffs will prove at trial;

E.      For an award of punitive damages against PCC on Plaintiffs' state law claims against PCC;

F.      For pre- and post-judgment interest as allowed by applicable law;

G.      For Plaintiffs' litigation costs, including attorney and expert witness fees and other costs, under 42 U.S.C. § 6972(e) or as otherwise allowed by law; and

H.      For such other relief as the Court may deem just and proper.

22-  COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

DATED:  April 19, 2024

**PERKINS COIE LLP**

By:  _/s/ Erick J. Haynie_
      **Stephen F. English**, OSB No. 730843
      SEnglish@perkinscoie.com
      **Christopher W. Rich**, OSB No. 990954
      CRich@perkinscoie.com
      **Erick J. Haynie**, OSB No. 982482
      EHaynie@perkinscoie.com
      1120 N.W. Couch Street, Tenth Floor
      Portland, OR  97209-4128
      Telephone:  503.727.2000
      Facsimile:  503.727.2222

Attorneys for Plaintiffs

23-  COMPLAINT

146325.0001.0001\166045075.9

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222