# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **EAGLE STAR ROCK PRODUCTS LLC**, an Oregon limited liability company; and **WILKINS TRUCKING CO., INC.**, an Oregon corporation, | Case No. 3:24-cv-00681-IM **OPINION AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| Plaintiffs, | |
| v. | |
| **PCC STRUCTURALS, INC.**, an Oregon corporation; **RED HAWK FIRE PROTECTION, LLC**, an Oregon limited liability company; and **LOVETT, INC.**, f/k/a Lovett Excavating, Inc., an Oregon corporation, | |
| Defendants. | |

Christopher W. Rich, Erick J. Haynie, and Stephen F. English, Perkins Coie, LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209. Attorneys for Plaintiffs.

Ariel Stavitsky and Nathan R. Morales, Stoel Rives LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Attorneys for Defendant PCC Structurals, Inc. Francesco Fischer, Matthew R. Wiese and William A. Davis, Davis Rothwell Earle & Xochihua, PC, 200 SW Market Street, Suite 1800, Portland, OR 97201. Attorneys for Defendant Red Hawk Fire Protection, LLC. David Corneil and Taylor Lovelace, Gordon Rees Scully Mansukhani LLP, 1300 SW 5th Avenue, Suite 2000, Portland, OR 97201. Attorney for Defendant Lovett, Inc.

**IMMERGUT, District Judge.**

Plaintiffs Eagle Star Rock Products LLC and Wilkins Trucking Co., Inc. brought a complaint against Defendants PCC Structurals, Inc., Red Hawk Fire Protection, LLC, and Lovett, Inc., arising from Defendants' disposal of contaminated waste on Plaintiffs' property. According to the complaint, Wilkins unknowingly received waste contaminated with polychlorinated biphenyls produced during a construction project on Defendant PCC's campus. Wilkins then deposited that waste at Eagle Star's mine, contaminating the land. The complaint alleges that Defendants failed to conduct adequate testing or remediation to eliminate the danger this waste poses to the environment.

Defendant PCC moves to dismiss Plaintiffs' claim for a violation of the Resource Conservation and Recovery Act ("RCRA"), as well as Plaintiffs' claims for negligence, negligence per se, nuisance, trespass, and indemnification under Oregon law. Motion to Dismiss ("Mot."), ECF 19. PCC alleges that Plaintiffs fail to state a claim upon which relief can be granted for each of these claims. Plaintiffs seek leave to file an amended complaint to add a claim under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). Motion for Leave to File Amended Complaint ("Mot. for Leave"), ECF 29. PCC opposes that motion, arguing Plaintiffs cannot allege a cognizable CERCLA claim and allowing amendment would prejudice PCC and cause undue delay. Response in Opposition ("PCC Resp."), ECF 35.

Defendant PCC's Motion to Dismiss is granted in part and denied in part. This Court concludes that Plaintiffs fail to state a RCRA claim because they do not identify how the waste deposited at Eagle Star's mine presents an "imminent and substantial endangerment" to people or the environment. This Court also concludes that Plaintiffs fail to state claims for negligence

per se, trespass/nuisance, and indemnity. Plaintiffs do, however, state a claim for negligence. Additionally, this Court concludes that Plaintiffs' CERCLA claim would not be futile, is not the product of undue delay, and would not prejudice PCC. To avoid confusion and streamline the litigation, this Court will deny the motion for leave to file an amended complaint as moot and grants Plaintiffs leave to file a second amended complaint consistent with this order. Plaintiffs need not move for leave before filing their second amended complaint.

## STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts presented must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding whether a plaintiff has met the plausibility requirement, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). A plaintiff may plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). However, the court is not required to accept as true "allegations that are merely conclusory,

PAGE 3 – OPINION AND ORDER DISMISSING COMPLAINT

unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536
F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 566 F.3d 979, 988,
*amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)).

## BACKGROUND

For purposes of the Motion to Dismiss, this Court takes the allegations of the complaint,
summarized here, as true. Plaintiff Wilkins Trucking Co., Inc. ("Wilkins") owns and operates the
Wilkins Meadows Pit in Portland, Oregon. Complaint ("Compl."), ECF 1 ¶ 11. At that facility,
Wilkins accepts "clean fill material" from local construction projects. *Id.* Plaintiff Eagle Star
Rock Products LLC ("Eagle Star") is a sand and gravel supplier that owns and operates a mine in
Columbia County, Oregon. *Id.* ¶ 10. As part of its operation, Eagle Star replaces mined-out areas
of its mine with clean fill. *Id.* ¶ 13. Eagle Star uses clean fill material received at the Wilkins
Meadow Pit as fill at its mine. *Id.* ¶¶ 15–17.

Plaintiffs allege that, in July 2021, Defendant PCC Structurals, Inc. ("PCC"), a parts
manufacturer for the aerospace, industrial gas turbine, and defense industries, sought to upgrade
a fire suppression line on its Portland campus. *Id.* ¶ 18–19. PCC contracted with Defendant Red
Hawk Fire Protection, LLC ("Red Hawk"), to complete the project. *Id.* ¶ 19. Red Hawk
subcontracted with Defendant Lovett, Inc. ("Lovett") to dispose of soil removed during the
project. *Id.* ¶ 20.

During the project, Defendants removed approximately 17 tons of soil and transported it
to the Wilkins Meadow Pit. *Id.* ¶ 24. Wilkins then transported this soil to Eagle Star's mine. *Id.*
¶¶ 25, 28. Plaintiffs allege that PCC then tested the soil remaining at its campus and identified
levels of polychlorinated biphenyls ("PCBs") that exceeded standards for "clean fill." *Id.* ¶ 27.
Defendants then informed Plaintiffs that the fill may have included unsafe levels of PCBs. *Id.*

PAGE 4 – OPINION AND ORDER DISMISSING COMPLAINT

¶ 29. In the meantime, Plaintiffs had deposited unrelated clean fill into the mine on top of the contaminated fill from PCC. *Id.*

At this point, the State of Oregon Department of Geology and Mineral Industries ("DOGAMI") issued an order requiring Eagle Star to stop accepting new fill material. *Id.* ¶¶ 32–34. Eagle Star eventually secured a Solid Waste Letter Authorization to leave the contaminated soil in place and resume its operations. *Id.* ¶¶ 41–42.

Plaintiffs sent a notice of intent to sue letter to all Defendants on August 15, 2023. *Id.* ¶ 8. Plaintiffs allege that Defendants were involved in generating, transporting, storing, and disposing of PCB-contaminated fill material, which is a solid and hazardous waste under RCRA. *Id.* ¶ 54. Plaintiffs allege that Defendants are responsible for "creating such conditions that currently may pose an imminent and substantial endangerment to the public health and the environment in Oregon" in violation of RCRA, *id.* ¶ 55, and are individually and jointly liable for abating the endangerment and remediating the PCBs on Plaintiffs' property. *Id.* ¶ 57.

Plaintiffs bring several additional state law claims. Plaintiffs assert a claim for negligence under Oregon law, arguing PCC was negligent in failing to test the soil for PCBs, shipping PCB-contaminated soil without a hazardous waste manifest, failing to immediately abate Plaintiffs' property, and failing to have environmental monitoring employees available. *Id.* ¶ 61–63. Plaintiffs also assert a claim for negligence per se, alleging Defendants breached several federal and Oregon regulations. *Id.* ¶ 69–73. Finally, Plaintiffs assert a claim for "trespass and/or nuisance," alleging the presence of PCB-contaminated fill constitutes either a trespass or a nuisance caused by Defendants. *Id.* ¶ 79–82. Plaintiffs also seek indemnity from PCC. *Id.* ¶ 90. Plaintiffs seek an award of damages and an injunction compelling Defendants to remediate Plaintiffs' properties. *Id.* at 22.

**DISCUSSION**

Defendant PCC challenges the sufficiency of Plaintiffs' RCRA and state law claims. PCC also argues that this Court should not grant leave to amend to add a CERCLA claim, contending such amendment would be futile, create undue delay, and be prejudicial to PCC. This Court has jurisdiction over the RCRA claim under 42 U.S.C. § 6972(a), the proposed CERCLA claim under 42 U.S.C. § 9613(b), and the state law claims under 28 U.S.C. § 1367(a). For the reasons stated below, this Court will dismiss the RCRA claim, the negligence per se claim, the trespass/nuisance claim, and the claim for indemnification, but will not dismiss the negligence claim. The Court concludes that the motion for leave to amend is meritorious, but will deny it as moot. Plaintiffs are granted leave to file a second amended complaint consistent with this opinion.

**A.  Judicial Notice**

This Court first addresses PCC's request for judicial notice. PCC requests that this Court take judicial notice of (1) a Solid Waste Letter Authorization issued by the Oregon Department of Environmental Quality ("DEQ") and (2) email communications between Plaintiffs, DEQ, and the federal Environmental Protection Agency ("EPA"). Reply in Support of Motion to Dismiss ("Reply"), ECF 32 at 3. Plaintiffs did not seek leave to file a surreply or otherwise indicate their position on this request.

When this Court considers a motion to dismiss under Rule 12(b)(6), it generally may not consider materials outside the pleadings. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). As an exception to that general rule, courts may take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201. *Id.* at 999. While a court may take judicial notice of matters of public record, it may not notice disputed facts contained in such records. *Id.* Under this exception, courts "routinely take judicial notice of letters published

by the government . . . as well as records and reports of administrative bodies." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (citations and internal quotation marks omitted). The party seeking judicial notice bears the burden of persuading the trial court that the materials are the proper subjects of judicial notice. *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (N.D. Cal. 2011).

The items PCC identifies are publicly available records of state or federal administrative agencies. This Court concludes that these documents are matters of public record and grants the request for judicial notice on that basis. *See Cachil DeHe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 968 n.4 (9th Cir. 2008) (taking judicial notice of "records of state [entities]" (alteration in original)). Although PCC requests this Court take judicial notice of these documents, it does not identify particular facts within the documents of which this Court may take judicial notice, instead requesting that this court "consider the entirety of both" documents. Reply, ECF 32 at 10 & n.4; This Court will therefore limit the judicially noticed fact in each instance to the existence of the documents and not the truth of the matters asserted therein. *See Capaci v. Sports Rsch. Corp.*, 445 F. Supp. 3d 607, 617 (C.D. Cal. 2020) (denying request for judicial notice where defendant "does not identify which facts within the exhibits it asks the court to judicially notice"); *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) ("[W]hen courts take judicial notice of administrative records, only the existence of the documents themselves including the findings therein are judicially noticeable, and not the contents of the documents for the truth of the matters asserted."); *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) (same).

## B. Resource Conservation and Recovery Act

This Court first addresses Plaintiffs' claim under RCRA. This Court concludes that the primary jurisdiction doctrine does not bar the claim and that Plaintiffs have pled sufficient facts

to establish that PCC may have "contributed" to the contamination of Plaintiffs' property. But Plaintiffs have not pled sufficient facts to show that the contamination may present an "imminent and substantial endangerment" to people or the environment. This Court will therefore dismiss the RCRA claim against all defendants with leave to amend.

### 1. Primary jurisdiction doctrine

PCC first argues that, under the primary jurisdiction doctrine, this Court should dismiss the RCRA claim because "the PCB impacts at issue in that claim are actively being addressed and resolved by several administrative agencies." Mot., ECF 19 at 10.

Federal courts[1] have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1291 (9th Cir. 2021) (quoting *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)). The doctrine is intended to allow the expert agency "to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1176 (10th Cir. 2005).[2]

---

[1] PCC argues that "Oregon's primary jurisdiction doctrine" should apply. Mot., ECF 19 at 11 (citing *Adamson v. WorldCom Commc'ns, Inc.*, 190 Or. App. 215 (2003)). RCRA is a federal statute, this is a federal court, and Plaintiffs' RCRA claim presents a federal question. *See* 42 U.S.C. § 6972(a). This Court will apply federal law.

[2] PCC's request that this Court dismiss the complaint *with* prejudice, Mot., ECF 19 at 5, is therefore not an appropriate application of the doctrine.

"Primary jurisdiction is properly invoked when a claim . . . requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Cohen*, 16 F.4th at 1291 (alteration in original) (quoting *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002)). If a court determines that the doctrine applies, it may either stay the proceedings or dismiss the case without prejudice, effectively "referring" the case to the agency. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 761 (9th Cir. 2015).

Although no fixed formula exists for applying the doctrine, *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956), courts in the Ninth Circuit have traditionally employed a four-factor test. This Court will consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Astiana*, 783 F.3d at 760 (quoting *Syntek*, 370 F.3d at 781). The Ninth Circuit has emphasized that efficiency is "the 'deciding factor' in deciding whether to invoke primary jurisdiction." *Id.* (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)). Balancing these factors and determining whether the doctrine should apply is "committed to the sound discretion of the court." *Syntek*, 307 F.3d at 781. At the motion-to-dismiss stage, the "question is whether any set of facts could be proved which would avoid application of the doctrine." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1088 (9th Cir. 2006). This Court has evaluated the relevant factors and concludes that they weigh against applying the doctrine here.

First, the issues involved in this case have not been assigned to the comprehensive regulatory authority of an expert agency. Congress has assigned responsibility for RCRA

PAGE 9 – OPINION AND ORDER DISMISSING COMPLAINT

enforcement to the EPA and, as the relevant state agency here, DEQ. 42 U.S.C. §§ 6903(1);6926(b), 6928(a); *see also* O.R.S. 466.086. But the text and structure of RCRA does not demonstrate "Congressional intent to place the initial consideration of an issue with an agency." *See United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1363 n.13 (9th Cir. 1987). To the contrary, RCRA includes a citizen-suit provision. 42 U.S.C. § 6972(a) (allowing "any person" to file suit in federal court); *see Bennett v. Spear*, 520 U.S. 154, 165 (1997) (interpreting "any person" to grant standing "to the full extent permitted under Article III"). The Ninth Circuit has repeatedly described this citizen-suit provision as "expansive." *Cal. River Watch v. City of Vacaville*, 39 F.4th 624, 629 (9th Cir. 2022) (quoting *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1089 (9th Cir. 2017)). This structure demonstrates that Congress did not assign *comprehensive* regulatory authority to the EPA; rather, Congress assigned substantial enforcement responsibility to federal courts and the public. Crucially, Congress also "*specified* the conditions under which the pendency of other proceedings bars suit under RCRA." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998) (emphasis in original); *see* 42 U.S.C. § 6972(b)(2)(C) Given that those conditions are not met here, Congress does not appear to have assigned the resolution of this dispute to an expert agency.

Second, the legal issues presented by this case are not so novel or complex that agency expertise would be helpful. While PCC contends that this case involves "industry-specific technical matters," Mot., ECF 19 at 12, virtually every RCRA case will involve "technical matters" of hazardous waste management that fall within the purview of an expert agency. But the primary jurisdiction doctrine does not "require that all claims within an agency's purview be decided by the agency" and is not meant to "secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit."

PAGE 10 – OPINION AND ORDER DISMISSING COMPLAINT

*Brown*, 277 F.3d at 1172 (internal quotation marks omitted). The doctrine applies only to a limited set of cases involving "technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry." *Astiana*, 783 F.3d at 760 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).

PCC fails to carry its burden to identify any "issues[s] of first impression" or "particularly complicated issue[s]" that would justify applying the doctrine to this case. *Brown*, 277 F.3d at 1172; *see Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1170 (D. Wyo. 1998) (emphasizing that the party invoking the doctrine must "show[] that courts in general lack the competence to efficiently and effectively resolve the issue"). PCBs are not an unusual substance, and the claims presented in Plaintiffs' complaint do not appear to involve complex issues that would benefit from the expertise of a regulatory agency. *See Marshall v. El Paso Nat. Gas Co.*, 874 F.2d 1373, 1377 (10th Cir. 1989) (holding that a "district court is not required to defer factual issues to an agency under the doctrine of primary jurisdiction if those factual issues are of the sort that the court routinely considers"). This Court, like many others, routinely decides "complicated environmental tort cases, which blend discreet facts with federal law, state law, and administrative regulations." *California v. Kinder Morgan Energy Partners, L.P.*, 569 F. Supp. 2d 1073, 1084 (S.D. Cal. 2008). Ample appellate guidance exists to guide this Court's determination of whether the Defendants may be liable under RCRA, *see, e.g.*, *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 950–55 (9th Cir. 2023), and whether the contamination at issue satisfies the imminent-and-substantial-endangerment element, *see, e.g.*, *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 99 F.4th 458, 474–76 (9th Cir. 2024). To the extent those determinations involve technical questions, it is "incumbent upon the parties to provide the Court with sufficient information to make those decisions." *L.A. Unified Sch. Dist. v.*

*S&W Atlas Iron & Metal Co., Inc.*, 506 F. Supp. 3d 1018, 1026 (C.D. Cal. 2020). The issues

presented in this suit, which involves the contamination of a limited number of discrete

properties, are "not so esoteric or complex as to foreclose their consideration by the judiciary."

*Wilson*, 989 F. Supp. at 1170. This Court therefore finds that the complexity of this case does not

justify application of the primary jurisdiction doctrine.

Finally, PCC also points to the interest of the agencies in the "uniform resolution of the

PCB impacts here." Mot., ECF 19 at 13. But PCC offers no reason to believe that the resolution

of this case would create inconsistent rulings or otherwise upset the uniform administration of

other cases. *Cf. Wai Ola All. v. U.S. Dep't of the Navy*, No. 22-00272, 2024 WL 2214557, at *9

(D. Haw. May 14, 2024) (applying doctrine when administrative proceedings were ongoing);

*Montgomery Env't Coal. v. Wash. Suburban Sanitary Comm'n*, 607 F.2d 378, 382 (D.C. Cir.

1979) (applying doctrine where pending administrative proceedings may moot the case). Instead,

PCC acknowledges that "DOGAMI and DEQ have largely resolved their roles in this matter"

and EPA has merely "retain[ed] its authority for final approval." Mot., ECF 19 at 13. PCC offers

no suggestion that this Court's resolution of this case might result in duplicative work, tax

judicial and agency resources, or delay the resolution of the underlying dispute. Under these

circumstances, issuing a stay or dismissing the case without prejudice would "needlessly delay

the resolution of claims," *Astiana*, 783 F.3d at 760, by referring this dispute to administrative

agencies that have already made their position on this dispute clear.[3] *See Williams Pipe Line Co.*

*v. Empire Gas. Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996). To the extent any conflict may exist

---

[3] PCC's argument that Plaintiffs' complaint involves "a question multiple agencies
already have answered," Reply, ECF 32 at 15, is particularly difficult to reconcile with its
apparent position that this Court should apply the primary jurisdiction doctrine to seek further
guidance from those same agencies.

between this Court's ultimate disposition of this case and the agencies' conclusions, this Court may resolve that conflict by considering the agency orders and permitting the agencies to comment before ordering relief. *See Wilson*, 989 F. Supp. at 1170.

This Court therefore declines to apply the primary jurisdiction doctrine and will proceed to assess the merits of the RCRA claim.

### 2. Plaintiffs' RCRA claim

To assert a claim under RCRA, 42 U.S.C. §§ 6901 et seq., Plaintiffs must show that Defendant is a:

> [(1)] past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of [(2)] any solid or hazardous waste [(3)] which may present an imminent and substantial endangerment to health or the environment[.]

42 U.S.C. § 6972(a)(1)(B); *see also Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850–51 (9th Cir. 2011) (explaining this definition); *Ctr. for Biological Diversity*, 80 F.4th at 950 (identifying the three elements of a RCRA claim). A plaintiff alleging a RCRA violation must also provide notice to the parties sixty days before filing suit. 42 U.S.C. § 6972(b)(1)(A).

The parties do not dispute whether PCB-contaminated fill materials qualify as a "solid or hazardous waste." PCC argues that Plaintiffs have failed to meet the first and third elements: that (1) PCC contributed to the past or present handling, storage, treatment, transportation, or disposal of such materials, and (3) the materials "may present an imminent and substantial endangerment to health or the environment." Mot., ECF 19 at 15–22. This Court concludes that Plaintiffs have alleged sufficient facts to show that PCC may have contributed to the to the storage, treatment, transportation or disposal of a solid or hazardous waste, but fail to allege that

PAGE 13 – OPINION AND ORDER DISMISSING COMPLAINT

the waste presents an imminent and substantial endangerment. This Court will therefore dismiss the RCRA claim.

### a. Storage, Transport, or Disposal of Hazardous Substances

PCC claims that Plaintiffs have failed to allege sufficient facts to establish that PCC contributed to the contamination of Plaintiffs' property. Mot., ECF 19 at 18. PCC claims that it "did not take any active role in, or contribute to, the transfer or storage" of the PCB-contaminated fill material. *Id.* Plaintiffs respond by pointing out that PCC oversaw the project on its campus that generated the contaminated fill and contracted to have that fill removed. Resp., ECF 24 at 17–18.

To establish the "contribution" element of a RCRA claim, a plaintiff must allege that the defendant was "actively involved in or [has] some degree of control over the waste disposal process." *Ctr. for Biological Diversity*, 80 F.4th ay 950 (quoting *Hinds*, 654 F.3d at 851). A defendant's "contribution must be causally connected to the possibility of an imminent and substantial endangerment." *Cal. Dep't of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930, 980 (E.D. Cal. 2003) (internal quotation marks omitted). Parties that may qualify as "contributors" under RCRA include generators, transporters, and owners or operators of waste treatment, storage, or disposal facilities. 42 U.S.C. § 6972(a)(1)(B).

PCC argues that it cannot be liable under RCRA because it did not perform any "active functions with a direct connection to the waste itself." *Ctr. for Biological Diversity*, 80 F.4th at 951 (quoting *Hinds*, 654 F.3d at 851); Mot., ECF 19 at 17–19. But while the statute requires "actual control," the term "contribution" is broad, and includes "'a share in any act or effect' giving rise to disposal of the waste that may present an endangerment." *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1229 (E.D. Wash. 2015) (quoting *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1383–84 (8th Cir. 1989)).

PAGE 14 – OPINION AND ORDER DISMISSING COMPLAINT

Examples of the outer limits of RCRA liability are illustrative: the Ninth Circuit has concluded that this definition does not reach a manufacturer whose products generated waste, *Hinds*, 654 F.3d at 852, a utility that only potentially contributed to waste dispersal, *Ecological Rts. Found.*, 874 F.3d at 1101, a city that incidentally carried waste through its water supply, *Cal. River Watch*, 39 F.4th at 633, and a government agency that passively owned land. *Ctr. for Biological Diversity*, 80 F.4th at 955.

Here, by contrast, the allegations in support of Plaintiffs' RCRA claim show that PCC exercises a greater degree of control over the disposal of the waste at issue. Although "passive ownership" of property alone is insufficient, *id.*, PCC was far from passive. The statute expressly listed a "generator" of waste as a possible RCRA offender. 42 U.S.C. § 6972(a)(1)(B). Plaintiffs' Complaint describes how PCC initiated the trenching project that generated the waste at issue. Compl., ECF 1 ¶ 19. While PCC's contractors may have been the parties directly responsible for removing, transporting, and disposing of the waste, Red Hawk and Lovett were only present on PCC's campus pursuant to a contract with PCC. PCC maintained "some degree of control over the waste disposal process," which is sufficient to support a RCRA claim. *Hinds*, 654 F.3d at 851. This Court will therefore deny PCC's motion to dismiss on this issue.

### b. Imminent and Substantial Endangerment

PCC argues that Plaintiffs have not alleged that any environmental regulator has found that the PCB-contaminated fill would constitute an "imminent and substantial endangerment." Mot., ECF 19 at 19–22. Plaintiffs respond by pointing out that PCBs are carcinogenic and that the levels of PCBs detected in soil testing on PCC's campus exceeded the regulatory standards for clean fill. Resp., ECF 24 at 19–20. Plaintiffs' pleadings are not sufficient to establish that the contaminated materials pose an imminent and substantial endangerment to human health or the environment.

PAGE 15 – OPINION AND ORDER DISMISSING COMPLAINT

An "endangerment" exists "if there is some reasonable cause for concern that someone or something may be exposed to a risk of harm by a release or a threatened release of a hazardous substance if remedial action is not taken." *Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d at 980 (citation omitted). Notably, "proof of actual or immediate harm is not necessary; rather, Plaintiffs need only present evidence that the contamination currently poses threatened or potential harm." *Cow Palace*, 80 F. Supp. 3d at 1228 (internal quotation marks omitted). A court may thus order relief "that ameliorates present or obviates the risk of future 'imminent' harms." *Ecological Rts. Found.*, 874 F.3d at 1089 (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 480 (1996)).

The word "imminent" refers to "the nature of the threat rather than identification of the time when the endangerment initially arose." *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994) (quoting *United States v. Price*, 688 F.2d 204, 213 (3d Cir. 1982)). The threat of harm must be "present *now*, although the impact of the threat may not be felt until later." *Price*, 39 F.3d at 1019 (emphasis in original); *see also Meghrig*, 516 U.S. at 485–86 (holding that an endangerment "can only be imminent if it threatens to occur immediately" (cleaned up)). The word "substantial" requires that there "be some necessity for the action." *Id.* It does not, however, "require quantification of the endangerment." *Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d at 980. All that is required to establish this element is "some reasonable cause for concern that someone or something may be exposed to a risk of harm . . . if remedial action is not taken." *Id.* (citation omitted).

"[D]istrict courts in the Ninth Circuit have interpreted 'imminent and substantial endangerment' liberally." *Sullins v. Exxon/Mobil Corp.*, No. 08-04927 CW, 2011 WL 8077086, at *4 (N.D. Cal. Jan. 26, 2011). "[B]ecause 'the word 'may' precedes the standard of liability'[,] Congress included expansive language intended 'to confer upon the courts the authority to grant

PAGE 16 – OPINION AND ORDER DISMISSING COMPLAINT

affirmative equitable relief to the extent necessary to eliminate *any risk* posed by toxic wastes.'" *Interstate Non-Ferrous Corp.*, 298 F. Supp. at 980 (emphasis in original) (quoting *Lincoln Props., Ltd. v. Higgins*, No. S-91-760, 1993 WL 217429, at *12 (E.D. Cal. Jan. 21, 1993)). But injunctive relief under RCRA should not issue "where the risk of harm is remote in time, completely speculative in nature, or *de minimis* in degree." *Id.* (quoting *Lincoln Props.*, 1993 WL 217429, at *13).

The Complaint alleges that a carcinogenic environmental contaminant, PCBs, is present in the soil at Eagle Star's property.[4] Compl., ECF 1 ¶¶ 27–29. Both the Complaint and the RCRA notice letters sent to Defendants allege that the concentrations of PCB in PCC's testing of the soil at its campus exceeded applicable regulatory standards for clean fill. *Id.* ¶ 27; Notice of Intent to Sue, ECF 25-1, Ex. A at 4.

Plaintiffs do not present the results of any testing for the presence of PCBs at Eagle Star's mine. It is not evident from Plaintiffs' complaint whether PCBs are present on-site above permitted limits, or even in detectable levels. *Cf., e.g.*, *N. Cal. River Watch v. Honeywell Aerospace*, 830 F. Supp. 2d 760, 769 (N.D. Cal. 2011) (denying motion to dismiss where plaintiff alleged defendant was responsible for discharge of toxins at its site that remained "high above the allowable Maximum Containment Levels"). While Plaintiffs assert that an endangerment exists, Compl., ECF 1 ¶ 55, they do not identify any mechanism or pathway by which the PCBs at its mine could potentially affect its workers, neighboring properties,

---

[4] PCC disputes whether PCBs are "highly carcinogenic" or merely "probable carcinogens." Reply, ECF 31 at 4 n.7. PCBs are a listed hazardous substance under CERCLA, 40 C.F.R. § 302.4 (2024), and this Court will assume that they are "highly carcinogenic" for purposes of deciding this motion to dismiss. *See Quantum Labs, Inc. v. Maxim Integrated Prods. Inc.*, No. 18-cv-07598, 2019 WL 6117481, at *6 (N.D. Cal. Nov. 18, 2019) (noting that a substance's status as a listed hazardous substance under CERCLA suggests it may present an imminent and substantial endangerment if present in concentrations above permitted limits).

groundwater, or the environment. Indeed, Plaintiffs' Complaint notes that Plaintiffs have covered the PCB-contaminated fill from PCC with unrelated clean fill, which may have cut off any viable pathway for contamination. *See* Compl., ECF 1 ¶ 29. "The essential point is that the solid waste presents an endangerment if harm may result absent further remedial measures." *Crandall v. City & Cnty. of Denver*, 594 F.3d 1231, 1238 (10th Cir. 2010); *see, e.g.*, *City of Fresno v. United States*, 709 F. Supp. 2d 934, 941 (E.D. Cal. 2010) (requiring allegation of pathways by which hazardous waste may endanger the environment or public). Viewing the allegations presented in the light most favorable to Plaintiffs, the complaint does not identify what realistic pathways of exposure exist or what further remedial measures are necessary to prevent harm. Plaintiffs' allegations are therefore insufficient to state a RCRA claim.

In enacting RCRA, "Congress did not intend for a private citizen to be able to undertake a cleanup and then proceed to recover its costs." *Meghrig*, 516 U.S. at 487. RCRA is a forward-looking statute intended to "minimize the present and future threat" of contamination, 42 U.S.C. § 6902(b), and its scope "quite clearly excludes waste that no longer presents . . . a danger," *Meghrig*, 516 U.S. at 480. Only CERCLA, not RCRA, "allows recovery of cleanup costs already incurred." *Pakootas v. Teck Cominco Metals, LTD*, 830 F.3d 975, 984 n.9 (9th Cir. 2016). This Court concludes that, while Plaintiff has pled substantial past costs incurred addressing the contaminated fill, it has not established "anything more than a speculative prospect of [present or] future harm" based on the contaminants now present on its property. *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 214 (2d Cir. 2009).

Because Plaintiffs have not "provide[d] any evidence . . . that there were realistic pathways of exposure" that may endanger the environment or the public, dismissal is warranted. *City of Fresno*, 709 F. Supp. 2d at 943. This Court grants PCC's motion to dismiss Plaintiffs'

RCRA claim.[5] Because Plaintiffs may cure this deficiency by adding factual allegations showing

that the contamination at Plaintiffs' mine presents an imminent and substantial endangerment to

people or the environment, this claim is dismissed with leave to amend.

## C. Leave to File an Amended Complaint

Plaintiffs request leave to file an amended complaint. Mot. for Leave, ECF 29.

Defendants Red Hawk and Lovett do not oppose this motion, but Defendant PCC opposes

Plaintiffs' request to add a new CERCLA claim against all Defendants. PCC Resp., ECF 35 at 2.

"Leave to amend shall be freely given when justice so requires, and this policy is to be

applied with extreme liberality." *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024)

(quoting *Desertain v. City of L. A.*, 754 F.3d 1147, 1154 (9th Cir. 2014)). Leave to amend should

be freely given in the absence of (1) undue delay, (2) bad faith, (3) repeated failure to cure

deficiencies, (4) prejudice, or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). While

undue delay alone is insufficient to deny a motion to amend, a contemporaneous finding of

prejudice, bad faith, or futility justifies denying a motion for leave to amend. *Trans Video Elecs.,*

*Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 507–08 (N.D. Cal. 2011).

PCC challenges Plaintiffs' proposed CERCLA claim as futile, argues Plaintiffs unduly

delayed in asserting the claim, and argues that prejudice to PCC would result from allowing

amendment. PCC Resp., ECF 35 at 4–5. This Court concludes that Plaintiffs should be granted

leave to amend. Although there are certain deficiencies in the CERCLA claim, identified below,

this Court cannot conclude that the CERCLA claim is so deficient that amendment would be

---

[5] Although this argument was raised only by PCC, it applies with equal force to Plaintiffs' RCRA claims against Red Hawk and Lovett. *See Abignin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008) ("A district court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants." (brackets omitted)).

futile. Plaintiffs plead sufficient facts to establish that they have incurred eligible response costs for which PCC may be liable. This case is still in early stages, so this Court cannot characterize Plaintiffs' delay in asserting the CERCLA claim as undue. And PCC will not be unduly prejudiced by allowing Plaintiffs to assert a CERCLA claim. Although this Court will deny the motion as moot, Plaintiffs are entitled to leave to file a second amended complaint that includes a CERCLA claim.

### 1. Futility

PCC primarily argues that this Court should deny leave to amend because Plaintiffs cannot make out a cognizable CERCLA claim. PCC Resp., ECF 35 at 7–8. Leave to amend should be denied "if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). Amendment is futile when "it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022). Courts apply the same standard to determine whether amendment would be futile as on a Rule 12(b)(6) motion. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). This Court concludes that Plaintiffs' proposed CERCLA claim is not futile.

CERCLA was enacted "both to provide rapid responses to the nationwide threats posed by the 30-50,000 improperly managed hazardous waste sites in this country as well as to induce voluntary responses to those sites." *United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 805 (S.D. Ohio 1983). To that end, CERCLA authorizes private parties to initiate civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their

creation. *See* 42 U.S.C. § 9607(a).[6] To prevail in a private cost recovery action under CERCLA, a plaintiff must establish that: (1) the site on which the hazardous substances are located is a "facility" under 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" from the facility has occurred; (3) such release has caused the plaintiff to incur costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of persons subject to the liability provisions of 42 U.S.C. § 9607(a). *3550 Stevens Creek Assocs. v. Barclays Bank of Cal.*, 915 F.2d 1355, 1358 (9th Cir. 1990).

PCC argues that the CERCLA claim in Plaintiffs' First Amended Complaint is futile because Plaintiffs cannot plead the third and fourth elements of a CERCLA claim. PCC Resp., ECF 35 at 7–8. This Court concludes that Plaintiffs' CERCLA claim is not futile because Plaintiffs have identified at least some recoverable response costs and pled sufficient facts to establish that PCC may be liable as an "arranger" under CERCLA. This Court notes, however, that some of Plaintiffs' response costs are not recoverable and that Plaintiffs have failed to plead that these costs were incurred consistent with the national contingency plan.

### a. Response costs

A plaintiff seeking private party response costs under CERCLA may recover only "necessary costs of response . . . consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). The party seeking recovery bears the burden of proving costs were (1) necessary and (2) consistent with the national contingency plan ("NCP"). *City of Colton v. Am. Promo. Events, Inc.-W.*, 614 F.3d 998, 1002–03 (9th Cir. 2010). PCC argues that Plaintiffs have failed to allege any specific response costs, that they cannot allege that their response costs

---

[6] Although CERCLA practitioners often cite to CERCLA's sections rather than the U.S. Code, this Court refers to the U.S. Code sections for consistency with the rest of this opinion.

were "necessary," and that they have failed to allege that any response actions have complied with the NCP. PCC Resp., ECF 35 at 10–11.

Plaintiffs' proposed First Amended Complaint alleges sufficient facts to survive a motion to dismiss. The complaint identifies the type of costs and how they were incurred, explaining that Eagle Star "began significant engineering and environmental work to monitor the extent of the PCB contamination." Proposed First Amended Complaint ("Proposed FAC"), ECF 29-1, Ex. A ¶ 36. The complaint also quantifies these costs, including "$32,388.00 . . . on engineering costs" necessary "to identify and assess the location and extent of the PCB contamination." *Id.* ¶ 44. At this stage of the litigation, Plaintiffs' complaint is sufficiently specific to overcome a motion to dismiss.

As discussed in more detail below, these investigation and monitoring costs may qualify as "necessary" costs recoverable under CERCLA. Because some recoverable costs exist, this Court need not determine at this stage which of Plaintiffs' other costs may be recoverable as "necessary." CERCLA also requires Plaintiffs to demonstrate compliance with the NCP to seek recovery of these costs, which the proposed amended complaint does not do. Accordingly, this Court will dismiss the motion to file a first amended complaint as moot and grant Plaintiffs leave to file a second amended complaint addressing these deficiencies.

### i.  Necessity

Response costs are "necessary" when "an actual and real threat to human health or the environment exist[s]" and the costs were incurred in a response action addressed to that threat. *City of Colton*, 614 F.3d at 1003 (quoting *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001) (en banc). Stated differently, necessary costs are "costs that are 'necessary to the containment and cleanup of hazardous releases.'" *United States v. Iron Mountain Mines, Inc.*, 987 F. Supp. 1263, 1271 (E.D. Cal. 1997) (quoting *United States v.*

PAGE 22 – OPINION AND ORDER DISMISSING COMPLAINT

*Hardage*, 982 F.2d 1436, 1448 (10th Cir. 1992)). Costs are not necessary without "some nexus between the alleged response cost and an actual effort to respond to environmental contamination." *City of Spokane v. Monsanto Co.*, 237 F. Supp. 3d 1086, 1094 (E.D. Wash. 2017) (quoting *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005)). The necessity of response costs is generally a question of fact that is not properly resolved at the pleading stage. *Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.*, 840 F.2d 691, 695 (9th Cir. 1988). But surviving a motion to dismiss requires a plaintiff to "allege at least one type of 'response cost' cognizable under CERCLA. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1154 (9th Cir. 1989).

Plaintiffs argue that they "have incurred substantial costs monitoring, assessing, and evaluating the extent of the release of PCBs at their facilities." Reply in Support of Motion for Leave ("Pl. Reply"), ECF 39 at 10; *see* Proposed FAC, ECF 29-1, Ex. A ¶ 44. Costs related to investigations and analysis in response to a threat to human health or the environment may qualify as "necessary" under CERCLA.[7] *See, e.g., Pakootas*, 905 F.3d at 579–81 (explaining that

---

[7] Plaintiffs cite to paragraphs 43 through 47 of their First Amended Complaint as describing their "costs monitoring, assessing, and evaluating the extent of the release of PCBs at their facilities." Reply in Support of Motion for Leave, ECF 39 at 10. This Court concludes that Plaintiffs can state a CERCLA claim based on investigatory costs. *See* Proposed FAC, ECF 29-1 ¶ 44 (identifying costs associated with "environmental engineering required to identify and assess the location and extent of the PCB contamination"). Because Plaintiffs have alleged at least one type of response cost cognizable under CERCLA, this Court need not determine at this stage which of Plaintiffs' other claimed damages, if any, are recoverable under CERCLA.

Plaintiffs also seek to recover legal fees. Proposed FAC, ECF 29-1, Ex. A ¶ 46. Fees for exclusively litigation-related matters may not be recovered under CERCLA, but legal fees may be recovered if they advance a statutory purpose. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 819–21 (1994). More detail would be necessary to determine whether Plaintiffs' legal fees are recoverable. Plaintiffs also seek to recover "dumping fees" and damages for "adverse impacts to their businesses." Proposed FAC, ECF 29-1 ¶¶ 45, 47. While some of these might qualify as cleanup costs, this Court notes that CERCLA is not an appropriate vehicle for the "recovery of private damages unrelated to [a] cleanup effort." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1535 (10th Cir. 1992); *see Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005)

hiring consultants to "investigate[] the presence and movement of toxic wastes" were recoverable costs); *City of Seattle v. Monsanto Co.*, 387 F. Supp. 3d 1141, 1157 (W.D. Wash. 2019). These costs are recoverable even if actual, on-site cleanup costs are not ultimately incurred. *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir. 1986).

PCC challenges whether these costs are "necessary," but argues only that the contamination presently poses no threat. PCC Resp., ECF 35 at 9–10. This argument misses the mark. Even if Plaintiffs' initial investigation, or the investigations of environmental agencies, concluded that no further remedial action was necessary, PCC has not shown that Plaintiffs' recovery costs were unreasonable or unnecessary, based on the facts known to Plaintiffs at the time, to assess whether the contaminated fill posed a threat to human or environmental health. *See Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 934 (6th Cir. 2004) (observing that CERCLA costs may include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances" (citing 42 U.S.C. § 9601(23)); *Pakootas*, 905 F.3d at 579 (noting remedial actions "need not *actually* achieve" the goals of "threat assessment or abatement" to be recoverable). CERCLA is a remedial, backwards-looking statute.[8] Whether Plaintiffs' actions were necessary—as judged with the benefit of hindsight—is

_____

(explaining that "a response cost is only 'necessary' if the cost is closely tied to the *actual cleanup* of hazardous releases").

[8] This Court notes that this feature also means that Plaintiffs may not recover response costs that they "will incur." Proposed FAC, ECF 29-1, Ex. A ¶ 68. CERCLA requires plaintiffs "to incur response costs before they can recover them," because "allowing recovery for future costs absent any binding commitment to incur those costs would leave no incentive to complete cleanup." *In re Dant & Russell, Inc.*, 951 F.2d 246, 250 (9th Cir. 1991). "Instead, a declaratory judgment [under 42 U.S.C. § 9613(g)(2)], whereby liability for future response costs would be allocated at a set percentage across responsible parties, is the proper mechanism for recouping future response costs in the CERCLA regime." *ASARCO LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859, 866 (9th Cir. 2020).

simply beside the point. Accepting PCC's reading of the statute would undermine CERCLA's remedial purpose and would undercut any incentive for regulated entities to respond promptly and effectively to both actual and potential threats to people and the environment.

The critical question is instead whether the costs Plaintiffs incurred investigating and monitoring the release of potentially hazardous materials at the mine were "necessary" based on the facts *then known to Plaintiffs*. To the extent that PCC argues that the release *never* could reasonably have presented a threat to human health or the environment, whether such a threat existed is a factual question, *see Carson Harbor Vill.*, 270 F.3d at 872, and thus inappropriate for resolution on a motion to dismiss. At this stage, Plaintiffs have pled sufficient facts to show that its investigation and monitoring costs are recoverable under CERCLA.

### ii. Compliance with the National Contingency Plan

The NCP governs all aspect of the response to a hazardous substance release, including the investigatory process. *See* 40 C.F.R. 300.405 et seq.[9] Costs are consistent with the NCP "if the action, when evaluated as a whole, is in substantial compliance" with the Plan. *City of Colton*, 614 F.3d at 1003 (quoting 40 C.F.R. § 300.700(c)(3)(i)). Proof by the plaintiff that the claimed response costs were incurred consistent with the NCP is an element of a prima facie case under CERCLA. *See Coppola v. Smith*, 935 F. Supp. 2d 993, 1007 (E.D. Cal. 2013); *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1153 (C.D. Cal. 2003).

PCC argues that Plaintiffs have failed to demonstrate compliance with the NCP. PCC Resp., ECF 35 at 9–11. Plaintiffs argue that they need not show consistency with the plan at this

---

[9] The NCP "is the federal government's blueprint for responding to both oil spills and hazardous substance releases." *See generally* EPA, National Oil and Hazardous Substances Pollution Contingency Plan (NCP) Overview, https://perma.cc/ZZ3J-DMJR (archived Oct. 2, 2024).

stage of the litigation because "initial investigation and monitoring costs" are exempt from that requirement. Pl. Reply, ECF 39 at 10. Although compliance with the NCP is generally a question of fact, *Cadillac Fairview*, 840 F.2d at 695, whether the NCP applies at all to these costs is a question this Court must address at this stage.

District courts have split on whether investigation and monitoring costs are exempt from the requirement to show NCP compliance. Some courts have concluded that the text of the statute, which "does not differentiate between initial assessment and evaluation costs and other kinds of costs," appears to "require that assessment and evaluation costs be consistent with the national contingency plan." *Bd. of Trs. of the Leland Stanford Junior Univ. v. Agilent Techs., Inc.*, 573 F. Supp. 3d 1371, 1374 (N.D. Cal. 2021); *see also Bd. of Cnty. Comm'rs v. Brown Grp. Retail, Inc.*, 768 F. Supp. 2d 1092, 1115 (D. Colo. 2011); *Orange Cnty. Water Dist. v. Alcoa Global Fasteners, Inc.*, 219 Cal. Rptr. 3d 474, 541 (Ct. App. 2017); *Aviall Servs., Inc. v. Cooper Indus., LLC*, 572 F. Supp. 2d 676, 695 (N.D. Tex. 2008); *Morrison Enters. v. McShares, Inc.*, 13 F. Supp. 2d 1095, 1119–20 (D. Kan. 1998), *rev'd on other grounds*, 302 F.3d 1127 (10th Cir. 2002); *Angus Chem. Co. v. IMC Global Ops., Inc.*, No. 95-295s, 1997 WL 280740 (W.D. La. Mar. 4, 1997). Other courts have taken the opposite view, concluding that consistency with the NCP is not necessary to recover investigation, monitoring, and evaluation costs. *See, e.g.*, *Mission Linen Supply v. City of Visalia*, No. 15-cv-0672, 2019 WL 446358, at *13 (E.D. Cal. Feb. 5, 2019); *Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-0256, 2016 WL 4258929, at *14 (E.D. Wash. Aug. 12, 2016); *CNH Am., LLC v. Champion Env't Servs., Inc.*, 863 F. Supp. 2d 793, 809 (E.D. Wisc. 2012); *Palmisano v. Olin Corp.*, No. C-03-01607, 2005 WL 6777560, at *19 (N.D. Cal. June 24, 2005); *Vill. of Milford v. K-H Holding Corp.*, 390 F.3d 926, 934 (6th Cir. 2004); *Foster v. United States*, 926 F. Supp. 199, 203 (D.D.C. 1996). These courts conclude

that the "detailed NCP provisions governing other response action cannot reasonably be applied to preliminary monitoring and evaluation." *Palmisano*, 2005 WL 6777560, at *19 (quoting *Marriott Corp. v. Simkins Indus., Inc.*, 825 F. Supp. 1575, 1583 (S.D. Fla. 1993)).

This Court finds the textual reading of the statute more persuasive. The plain language of CERCLA requires parties seeking to recover any response costs, including investigation, monitoring, and assessment costs, to show that those costs were incurred consistent with the NCP. *See Agilent Techs.*, 573 F. Supp. 3d at 1374 (citing 42 U.S.C. § 9607(a)(4)(B)); *see also Pakootas*, 905 F.3d at 581 (reading "CERCLA's cost recovery provisions as making no distinction between cleanup and investigatory costs"); *Vill. of Milford*, 390 F.3d at 934 n.1 (finding "nothing in CERCLA that exempts such costs from the requirements of the NCP"). But this Court notes that its reading of the statute is not necessarily inconsistent with the concerns that have led other courts to reach the opposite conclusion.

Two subsections of the NCP govern response actions by private parties. *See* 40 C.F.R. § 300.700(c)(5)-(6). Section 300.700(c)(5) lists provisions that are "*potentially* applicable to private party response actions," while Section 300.700(c)(6), which requires public comment "concerning the selection of the response action," likewise identifies public-participation provisions that are "*potentially* applicable." This language suggests that, while a party seeking to recover costs must demonstrate consistency with the NCP, a party seeking recovery of investigation and monitoring costs need only demonstrate compliance with the sections of the NCP applicable to assessing such activities. *See Orange Cnty. Water Dist.*, 219 Cal. Rptr. 3d at 541 (holding that "consistency with the NCP in this context may not mean that *all* NCP requirements are met" (emphasis in original)). Therefore, while Plaintiffs must plead compliance with the NCP, this Court will not conclude that Plaintiffs cannot plead compliance with the NCP.

PCC argues, for instance, that Plaintiffs should have notified affected citizens and offered a public comment period. PCC Resp., ECF 35 at 9–10. These provisions are plainly inapplicable; Plaintiffs have not yet selected a remedy or engaged in any sort of "removal action" such that the NCP would obligate them to provide a public comment period. *See United Alloys, Inc. v. Baker*, 797 F. Supp. 2d 974, 997 (C.D. Cal. 2011) ("[P]ublic participation is not a prerequisite to the recovery of investigatory costs."). Most of the other NCP requirements, such as the worker health and safety requirements and other public information and community relations requirements, regulate various aspects of the cleanup effort itself and are likewise irrelevant to an action seeking only to recover the costs of an initial investigation. *See Licciardi v. Murphy Oil USA, Inc.*, No. 93-490, 1995 WL 45861, at *2 (E.D. La. Feb. 2, 1995) (Clement, J.) (concluding that "most provisions of the NCP are simply inapplicable to costs incurred for investigation" but holding plaintiffs must still plead compliance).

Some NCP provisions, however, like the cost documentation requirement of Section 300.160, may reasonably be applied to investigation and monitoring costs. *See generally United States v. W.R. Grace & Co.-Conn.*, 280 F. Supp. 2d 1149, 1179–80 (D. Mont. 2003) (discussing this requirement); *United States v. Chapman*, 146 F.3d 1166, 1171 (9th Cir. 1998). This Court does not anticipate that pleading compliance with potentially applicable sections of the NCP will pose a significant burden to Plaintiffs in this case. *See Agilent Techs.*, 573 F. Supp. 3d at 1375 ("[I]t does not seem difficult, given the relative vagueness of the provisions in the NCP that relate to assessment and evaluation, to demonstrate that costs on these areas are 'consistent' with the plan.") Indeed, Plaintiff comes close to doing so already. *See* Compl., ECF 1 ¶¶ 44, 46. But a party seeking to recover such costs is still required to plead consistency with the national contingency plan as an element of its claim. Plaintiffs have not done so. This Court will

accordingly deny Plaintiffs' motion to file a first amended complaint, but grants Plaintiffs leave to correct this deficiency in a second amended complaint.

### b. Arranger liability

PCC argues that it cannot be liable under CERCLA as an "arranger" of hazardous waste disposal. PCC Resp., ECF 35 at 11–15. It reads CERCLA to require any arranger to know that the waste it is disposing of is hazardous. *Id.* at 12. And it states that PCC itself did not take intentional steps to dispose of the material, but instead hired contractors to do so. *Id.* at 14–15.

PCC's arguments are not persuasive. Although PCC contends that Plaintiffs cannot establish arranger liability because they cannot show that PCC "knew the substance it arranged disposal of was hazardous at the time of the alleged arrangement," *id.* at 13, nothing in the text of CERCLA suggests that Congress intended to require an arranger specifically know that the waste is hazardous. The structure of the statute, which does not include "lack of knowledge" among possible defenses, further suggests that this judge-created requirement has no basis in CERCLA's text. PCC's argument that it cannot be considered an "arranger" because it merely hired a contractor likewise cannot be reconciled with CERCLA's text.

### i. Knowledge requirement

PCC asserts, with limited citation to out-of-Circuit authority,[10] that "courts" have held that arranger liability "requires not just an intent that the material be disposed but also that the

---

[10] Although PCC presents *Town of Islip v. Datre* as "citing multiple cases to this effect," PCC Resp., ECF 35 at 12, that court noted that "few courts have addressed whether an arranger defendant must know that the material in question is hazardous," and cited only one unpublished case that it characterized as "most directly on point." 245 F. Supp. 397, 422 (E.D.N.Y. 2017) (citing *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2012 WL 2704920 (E.D. Wisc. July 3, 2012)). Apart from *Town of Islip* and *Appleton Papers*, this Court has identified only two other cases—both of which post-date *Town of Islip*—reaching the same holding. *City of Las Cruces v. Lofts at Alameda, LLC*, 591 F. Supp. 3d 1038, 1046 (D.N.M. 2022); *68th St. Site Work Grp. v. Airgas, Inc.*, No. 20-3385, 2021 WL 4255030, at *22 (D. Md.

arranger knew the material was hazardous (under CERCLA)." PCC Resp. at 12 (citing *Town of Islip v. Datre*, 245 F. Supp. 3d 397 (E.D.N.Y. 2017)). On this point, however, the language of the statute is ambiguous, and the parties point to no controlling authority that resolves that ambiguity. The case PCC primarily relies on, from the Eastern District of New York, held that CERCLA requires a plaintiff to "establish that the defendant who arranged for the disposal of the material knew, or should have known, that the material contained hazardous substances." *Town of Islip*, 245 F. Supp. 3d at 424; *see also City of Las Cruces v. Lofts at Alameda, LLC*, 591 F. Supp. 3d 1038, 1047 (D.N.M. 2022) (applying the same standard).

      This Court disagrees with that reading of the statute. Arranger liability requires a party take intentional steps to arrange for the disposal of a hazardous substance. But the text of CERCLA does not additionally require that the arranger knew that the waste is hazardous, and the structure of the statute suggests that such a requirement does not exist.

      CERCLA provides that four classes of persons may be liable for environmental contamination. One of those four classes are "arrangers," which CERCLA defines as:

> [A]ny person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such party, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such substances . . . .

42 U.S.C. § 9607(a)(3).[11] To be liable as an arranger, an entity must take "intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. Co. v. United States*,

---

Sept. 16, 2021), *rev'd sub nom. 68th St. Site Work Grp. v. Alban Tractor Co.*, 105 F.4th 222 (4th Cir. 2024).

    [11] The meaning of this particular provision has vexed federal courts. The Ninth Circuit has pointed out that it "does not make literal or grammatical sense as written," *Pakootas*, 452 F.3d at 1080, while another circuit has acknowledged that "Congress did not, to say the least,

556 U.S. 599, 611 (2009). "While actions taken with the *intent* to dispose of a hazardous substance are sufficient for arranger liability, actions taken with the mere *knowledge* of such future disposal are not." *Team Enters., LLC v. W. Inv. Real Est. Tr.*, 647 F.3d 901, 908 (9th Cir. 2011) (emphasis in original).

In a comprehensive and well-reasoned recent opinion, the Eastern District of California considered and rejected the argument PCC now advances, concluding that "CERCLA's statutory text, structure, remedial purpose and retroactive nature" requires that an "alleged 'arranger' need not have any specific state of mind about whether a particular substance is hazardous or dangerous." *City of Lincoln v. County of Placer*, 668 F. Supp. 3d 1079, 1097 (E.D. Cal. 2023); *see also 68th St. Site Work Grp. v. Alban Tractor Co.*, 105 F.4th 222, 230–31 (4th Cir. 2024) (concluding the text of CERCLA does not require showing an arranger knew the waste was hazardous); *Transp. Leasing Co. v. California (CalTrans)*, 861 F. Supp. 931, 941–42 (C.D. Cal. 1993) (same). As *City of Lincoln* explains, "[b]y its own terms, section 107(a)(3) imposes liability on those who arrange for the disposal of hazardous substances regardless of whether they knew or should have known those substances were hazardous at the time." *City of Lincoln*, 668 F. Supp. 3d at 1101. The court accordingly declined to "impose a judicially created specific knowledge or intent requirement" in the absence of any statutory language requiring knowledge of the substance's hazardous nature. *Id.*

This Court agrees with *City of Lincoln* and adopts its analysis. An "arranger" under CERCLA must intend to dispose of a substance, and that substance must be hazardous. But the text of § 9607(a)(3) does not require knowledge of a substance's hazardous nature, and the

---

leave the floodlights on to illuminate the trail to the intended meaning of arranger status and liability." *United States v. Aceto Agric. Chems. Corp.*, 872 F.3d 1373, 1380 n.8 (8th Cir. 1989).

absence of lack of knowledge among the list of defenses to liability in § 9607(b) further suggests

that no knowledge requirement applies. *See id.* at 1099–1100; *Blasland, Bouck & Lee, Inc. v.*

*City of North Miami*, 283 F.3d 1286, 1304 (11th Cir. 2002) (holding that CERCLA permits only

enumerated statutory defenses to liability). Plaintiffs therefore need not show that PCC knew the

material was hazardous to establish liability under CERCLA.

### ii. Contract

PCC also argues that arranger liability cannot apply because PCC's involvement in the

project was limited to hiring a contractor. PCC Resp., ECF at 13–14. PCC argues that it did not

have "control or active involvement in the soil characterization or disposal activities" performed

during the project, and that Plaintiffs have not plead specific facts sufficient to show that PCC is

vicariously liable for the actions of its contractors. *Id.* at 14.

This argument cannot be reconciled with the text of CERCLA. An arranger is "any

person who by contract . . . arranged for disposal or treatment" of hazardous substances. 42

U.S.C. § 9607(a)(3). According to Plaintiffs' complaint, PCC knew and intended for its

contractor to dispose of the soil produced as part of its project. Proposed FAC, ECF 29-1, Ex. A

¶¶ 19, 24. PCC owned the soil, had the authority to control its disposal, and exercised that

authority by contracting with Red Hawk to dispose of it. *See Nu-West Mining, Inc. v. United*

*States*, 768 F. Supp. 2d 1082, 1088 (D. Idaho 2011) (defining the three-part test for arranger

liability). One who contracts to dispose of a substance has "arranged" for its disposal, even if the

contract does not specifically mention the final disposal site of the material. *Transp. Leasing Co.*,

861 F. Supp. at 942. PCC "cannot avoid liability by cleverly contracting" away its liability by

transferring its waste to Red Hawk and Lovett for disposal. *City of Lincoln*, 668 F. Supp. 3d at

1100.

Plaintiffs have alleged sufficient facts to survive a motion to dismiss on this issue. The motion for leave to amend is therefore not futile.

## 2.  Undue delay

PCC next argues that amendment would unduly delay the litigation, contending that Plaintiffs had ample opportunity to include a CERCLA claim in their original pleading and offer no explanation for failing to do so. PCC Resp., ECF 35 at 15–17.

This is Plaintiffs' first attempt to amend their complaint. This case was filed in April 2024 and Plaintiffs sought leave to amend in August, only four months later. While PCC is correct that "whether the moving party knew or should have known the facts and theories raised by the amendment" is relevant to analyzing undue delay, *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990), "[d]elay alone does not provide sufficient grounds for denying leave to amend." *Hurn v. Ret. Fund Tr. of Plumbing Indus.*, 648 F.2d 1252, 1254 (9th Cir. 1981). Given that this case is still at an early stage, allowing Plaintiffs to allege a new theory will not substantially delay the proceedings or require reopening discovery. This Court finds that Plaintiffs did not unduly delay in asserting a CERCLA claim under the circumstances of this case. *Cf. AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (identifying cases holding that delays of eight and fifteen months constituted "undue delay").

## 3.  Prejudice to PCC

Prejudice is the crucial factor in assessing a motion for leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). PCC does not show any prejudice that would result from allowing an amendment. In *DCD Programs*, the Ninth Circuit concluded that no evidence of prejudice existed because the case was "still at the discovery stage." *Id.* at 187–88. Here, discovery has not

yet begun, so allowing PCC to assert a new theory will not delay these proceedings or create substantial additional costs. *Cf. AmerisourceBergen Corp.*, 465 F.3d at 953 (finding prejudice where amendment would have "unfairly imposed potentially high, additional litigation costs"); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (finding prejudice where motion made "on the eve of the discovery deadline" would require reopening discovery, causing undue delay and prejudice). The factual allegations underlying the CERCLA claim are largely the same as those underlying the RCRA claim, so any additional costs of discovery would be marginal at best. PCC simply has not established any prejudice here. Plaintiffs are entitled to leave to file a second amended complaint.

**D. State Law Claims**

Plaintiffs assert claims for negligence, negligence per se, nuisance and/or trespass, and indemnification under Oregon law.[12] Compl., ECF 1 ¶¶ 60–93. This Court has jurisdiction over these claims because they form part of the same case or controversy as Plaintiffs' CERCLA claim. 28 U.S.C. § 1367(a). PCC moves to dismiss each of these claims, arguing that Plaintiffs have failed to state a claim. Mot., ECF 19 at 22. This Court agrees with PCC that Plaintiffs cannot state a claim for negligence per se or indemnification, and that Plaintiffs' alleged injury is better understood as a negligence claim rather than nuisance or trespass. This Court denies the motion to dismiss as to Plaintiffs' negligence claim.

**1. Negligence**

Plaintiffs' Complaint asserts a claim for negligence under Oregon law. Compl., ECF 1 ¶¶ 60–67. PCC argues that Plaintiffs have failed to state a claim for negligence because the

---

[12] The original complaint asserted these claims against PCC only, while the proposed first amended complaint asserts this claim against all Defendants. Proposed FAC, ECF 29-1, Ex. A. Apart from this difference, the two are materially identical.

complaint does not say how PCC caused Plaintiffs' losses. Mot., ECF 19 at 24. PCC also argues

that Plaintiffs fail to establish that Plaintiffs' injury was a foreseeable risk of PCC's conduct. *Id.*

at 25. Finally, PCC argues that Plaintiffs have failed to show PCC breached a duty of care. *Id.* at

26.

> To survive a motion to dismiss, a plaintiff must allege:

>> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent

*Moody v. Or. Cmty. Credit Union*, 371 Or. 772, 784 (2023) (quoting *Solberg v. Johnson*, 306 Or.

484, 490–91 (1988)).

> Plaintiffs allege that PCC created a foreseeable risk of harm by failing to test for PCBs

before authorizing its contractors to dispose of the fill, that PCC's failure to test was

unreasonable, that PCC failed to timely notify Plaintiffs of the test results, and that this conduct

resulted in harm to Plaintiffs. Compl., ECF 1 ¶¶ 61–62. At this stage, Plaintiffs' complaint is

sufficient to state a claim for negligence under Oregon law. On the duty of care issue, other

courts have recognized that a "duty to exercise reasonable care may exist where a defendant has

subjected a plaintiff to harm by exposing their land to toxic chemicals." *Greenfield MHP*

*Assocs., L.P. v. Ametek, Inc.*, 145 F. Supp. 3d 1000, 1015 (S.D. Cal. 2015). And on foreseeability

and causation, this Court concludes that Plaintiffs have pled sufficient facts to show that PCC

may be held responsible for the contamination of Plaintiffs' properties, for substantially the same

reasons discussed above in considering whether PCC may be held liable as a contributor or

arranger under RCRA and CERCLA. Whether PCC actually breached its duty of care, and the

extent to which PCC's breach caused the damages Plaintiffs alleges, are questions of fact that are inappropriate for resolution at this stage.

### 2. Negligence per se

Plaintiffs assert a claim for negligence per se. Negligence per se is a doctrine that affects the standard of care in a negligence action. By showing the defendant violated a regulation, the plaintiff establishes duty and breach of duty, but must still prove causation and damages as part of its existing negligence claim. *See Moody*, 371 Or. 781–82 (explaining that negligence per se "is not a separate type of negligence claim with its own elements" under Oregon law).

Plaintiffs base their negligence per se claim on five regulations that Defendants allegedly violated: Oregon Administrative Rule ("OAR") 340-102-0011, OAR 340-093-0040, 40 C.F.R. § 262.20(a), 40 C.F.R. § 761.61, and 40 C.F.R. pt. 761, subpart K. Compl., ECF 1 ¶¶ 68–77.. This Court concludes that none of these regulations can form the basis of a negligence per se claim. Plaintiffs therefore fail to state a claim for negligence per se. Because of the relationship between negligence per se and common law negligence, this does not affect Plaintiffs' ability, discussed above, to assert a general negligence claim.

To form the basis of a negligence per se claim, a regulation must "define[] the standard of care expected of a reasonably prudent person under the circumstances." *Deckard v. Bunch*, 358 Or. 754, 761 n.6 (2016); *see Shahtout v. Emco Garbage Co.*, 298 Or. 598, 601 (1985) (requiring the regulation "fix[] the legal standard of conduct that there is no question of due care left for a factfinder to determine"). The question of whether a plaintiff can assert a cause of action based on negligence per se often turns on whether a private cause of action exists under a statute, because both "address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damage liability." *Lutz v.*

*Chromatex, Inc.*, 718 F. Supp. 413, 428 (M.D. Pa. 1989) (quoting *Frederick L. v. Thomas*, 578 F.3d 513, 517 n.8 (3d Cir. 1978)).

The federal regulations Plaintiffs cite as the basis of their negligence per se claim were promulgated under RCRA and the Toxic Substances Control Act, neither of which contain a private right of action for damages. *See Meghrig*, 516 U.S. at 484 (no such right of action under RCRA); *Sipes ex rel. Slaughter v. Russell*, 89 F. Supp. 2d 1199, 1204–05 (D. Kan. 2000) (no private right of action for damages under TSCA). The majority view among federal courts, which this Court agrees with, is that plaintiffs should not be permitted to "use the theory of negligence per se to bootstrap a private cause of action for damages when one is not provided for by the RCRA" or TSCA. *Short v. Ultramar Diamond Shamrock*, 46 F. Supp. 2d 1199, 1201 (D. Kan. 1999). These are strict liability statutes that do not provide an appropriate standard of care by which to measure a negligence claim. *See W. Greenhouses v. United States*, 878 F. Supp. 917, 930 (N.D. Tex. 1995). This Court accordingly concludes that violations of the regulations Plaintiffs cite cannot give rise to negligence per se liability. *See Santa Clarita Valley Water Agency v. Whittaker Corp.*, No. 18-cv-06825, 2021 WL 6104175, at *1 (C.D. Cal. Dec. 3, 2021).

Oregon courts have not addressed whether Oregon's waste management statutes provide an applicable standard of care for negligence per se cases. But Oregon's hazardous waste statutes, like RCRA, appear to impose strict liability rather than defining a legal standard of conduct. *Oil Re-Refining Co. v. Env't Quality Comm'n*, 273 Or. App. 502, 514–15 (2015). This Court thus concludes that they cannot form the basis of a negligence per se claim. PCC's motion to dismiss the negligence per se claim is granted.

### 3. Trespass/Nuisance

Plaintiffs assert a claim for "trespass and/or nuisance." Compl., ECF 1 ¶ 78–88.[13] PCC argues that both claims fail for lack of causation and that, even if proven, the intrusion of PCBs on Plaintiffs' property was not intentional or reckless. Mot., ECF 19 at 30. PCC also argues that Plaintiffs may have accepted contaminated fill from other sources and cannot attribute any injuries specifically to fill from PCC. *Id.*

Under Oregon law, trespass is an "actionable invasion of a possessor's interest in the exclusive possession of land," while a nuisance is an "actionable invasion of a possessor's interest in the use and enjoyment of his land." *Martin v. Reynolds Metals Co.*, 221 Or. 86, 90 (1959). The two claims are distinct because a nuisance is defined as "an unreasonable *non-trespassory* interference." *Mark v. Dep't of Fish & Wildlife*, 158 Or. App. 355, 360 (1999) (emphasis added). Plaintiffs' complaint alleges a direct physical intrusion on Eagle Star's property through the presence of the contaminated fill. *See Davis v. Ga.-Pac. Corp.*, 251 Or. 239, 242–43 (1968). This Court construes Plaintiffs' claim as one for trespass rather than nuisance.

To state a claim for trespass under Oregon law, a plaintiff "must establish an intentional, physical intrusion by [the defendant] on [the plaintiff's property]," which plaintiff did not authorize or consent to and which caused plaintiff damage. *Verizon Nw., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265, 1278 (D. Or. 2010) (quoting *Huffman & Wright Logging Co. v. Wade,* 317 Or. 445, 469 n.8 (1993)). Plaintiffs state that they "did not permit or allow PCC to transport PCB-contaminated fill onto their property." Compl., ECF 1 ¶ 81.

---

[13] The original complaint asserted these claims against PCC only, ECF 1 ¶¶60–67, while the proposed amended complaint asserts these claims against all Defendants. Proposed ECF 29-1, Ex. A, ¶¶ 95–105. Apart from this difference, the two are materially identical.

The Court concludes that Plaintiffs' Complaint fails to state a claim for trespass against PCC. Plaintiffs allege that, while they did not know the fill was contaminated, they accepted the fill in the ordinary course of business. Compl., ECF 1 ¶¶ 25–26, 28. Plaintiffs also allege that they took ownership of the contaminated fill and deposited large quantities of other fill on top of it. *Id.* ¶ 29. While Plaintiffs allege that Defendant Lovett transported this fill to Plaintiff Wilkins, *id.* ¶ 24, they do not identify any intrusion by Defendant PCC onto Plaintiffs' property.

To be sure, a trespass can occur if a defendant exceeds the limits of an authorized entry, or if the plaintiff revokes its authorization. *See, e.g.*, *Mangini v. Aerojet-Gen. Corp.*, 281 Cal. Rptr. 827, 837 (Ct. App. 1991) (concluding plaintiff stated claim for trespass where defendant dumped hazardous waste in violation of its lease and then refused to clean up the waste). Here, however, Plaintiffs' Complaint shows that they not only consented to the entry of the fill but intended to retain permanent possession of it. *See* Restatement (Second) of Torts § 160 cmt. m. (Am. L. Inst. 1965). Indeed, Plaintiff Wilkins was the one who ultimately brought the fill to Eagle Star's mine. Compl., ECF 1 ¶¶ 25, 28. The crux of Plaintiffs' objection is not that the fill itself was unwanted, but that Defendants delivered the fill in a condition that resulted in damage to Plaintiffs once that condition became known. The Court concludes that this type of injury, for which Plaintiffs seek the same damages as in their negligence claim, is better analyzed under the law of negligence than the law of trespass. This Court accordingly dismisses the claim for trespass/nuisance against PCC.

### 4. Indemnity

Finally, Plaintiffs assert a claim for indemnity against PCC. Plaintiffs state that they have "undertaken obligations with one or more regulatory authorities to remediate or otherwise mitigate the environmental consequences" of the disposal of contaminated fill, and "may also

undertake further such obligations." Compl., ECF 1 ¶ 90. This Court concludes that Plaintiffs'

allegations are insufficient to state a claim for indemnity.

The elements of a claim for indemnification under Oregon law are: (1) the claimant's

discharge of a legal obligation owed to a third person, (2) defendant's liability to the third

person, and (3) as between the claimant and the defendant, the obligation ought to be discharged

by the defendant. *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.*, 290 Or. 909, 919–20 (1981).

Comparative negligence has obviated most of the traditional function of indemnity claims. *See*

*Eclectic Inv., LLC v. Patterson*, 357 Or. 25, 35–38 (2015).

Plaintiffs argue only that PCC "could have been liable" to a third person. Resp., ECF 24

at 31. An indemnity claim requires that the defendant "*was* . . . liable to the third party." *Eclectic*

*Inv.*, 357 Or. at 33 (emphasis added). Plaintiffs do not identify a judgment, settlement, or other

obligation that made PCC liable to any third party. As discussed above, Plaintiffs may seek to

recover remediation costs under CERCLA, and may seek a declaratory judgment to allocate

future remediation costs. Plaintiffs may also seek indemnification if they identify a third party to

which they were liable. But Plaintiffs fail to state a claim for indemnification at this time.

## CONCLUSION

PCC's Motion to Dismiss, ECF 19, is GRANTED as to Plaintiffs' RCRA claim,

GRANTED as to Plaintiffs' claims for negligence per se, trespass/nuisance, and indemnity

against Defendant PCC, and DENIED as to Plaintiffs' claim for negligence against Defendant

PCC. Plaintiffs' RCRA claim is dismissed as to all Defendants with leave to amend.

The day before briefing was completed on the Motion to Dismiss, Plaintiffs filed a

Motion for Leave to File First Amended Complaint. ECF 29. This Court concludes that Plaintiffs

may amend their complaint to add a CERCLA claim. In the interest of efficiency and to avoid

possible confusion, however, that Motion is DENIED as moot. Plaintiffs are GRANTED leave to

file a new second amended complaint consistent with this order within twenty-one (21) days of the issuance of this order. Plaintiffs need not move this Court for leave before filing their second amended complaint.


**IT IS SO ORDERED.**

DATED this 11th day of November, 2024.


/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge